In the Matter of the Claim of MINNIE DUBINSKY, Appellant, against SAMUEL KOFSKY and Others, Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 12, 1934

*Meyer Parodneck*, for the appellant.

*Frederick Mellor* [*Bernard F. Farley* of counsel], for the respondents.

HEFFERNAN, J. This is an appeal by the widow of Isidore Dubinsky from a decision of the State Industrial Board denying her death benefits under the Workmen's Compensation Law. The decision is predicated on a finding that Dubinsky's death was not the result of accidental injuries arising out of and in the course of his employment.

Dubinsky was employed as a coat finisher by Kofsky & Gilman at their place of business on the forty-second floor of the premises known as 512 Seventh avenue, New York city. The structure in question was known as an office and loft building and each floor was occupied by many tenants.

On September 26, 1932, at six-forty-five A. M., according to his custom, Dubinsky entered this building and was taken on the elevator to the forty-second floor, his place of employment, by the night watchman. He was never seen alive again. At about seven-thirty A. M. of the same day his dead body was found on the roof of the eighteen-story building adjoining at a point variously estimated from four to eighteen feet from the wall of 512 Seventh avenue. It is conceded that death resulted from the fall. The shop where decedent was employed was opened each morning between seven and seven-thirty. Kofsky, one of the employers, opened the shop at seven-fifteen on the morning of the fatality. The elevator which carried Dubinsky to the place of his employment discharged passengers in a hallway. The shop where Dubinsky was employed was entered from the hallway. There are no windows in this hallway and no means of ventilation. There is a fire tower in the building with an exit to each floor. It is undisputed that when Dubinsky and his coemployees arrived at the premises before the shop was opened they waited on the landing of the fire tower. The employers, who were familiar with this practice, never issued any order prohibiting it. The fire tower was the only place on the floor where the employees could obtain fresh air while waiting for the shop to open. In fact it was the only available place to wait. It was the only place provided by the employers for this purpose and consequently it must be considered as part of their premises.

The Board found that on the morning in question Dubinsky entered the fire tower landing and " either jumped or fell " from this opening and that his death " was not the result of accidental injuries arising out of and in the course of his employment." To justify its conclusion it has found as a fact that decedent upon arrival at the premises of his employers " entered a door not connected with the premises of his employer, leading to a fire tower, which was unrelated to and entirely distinct from his employer's place of business." This finding is not only not supported by any

evidence but is contrary to all the proof in the case. At the time of his injury decedent was on the fire tower landing waiting for work to begin — he was on the employers' premises using a place which they contemplated he should use. It would be a harsh rule to deny compensation to an employee for an accidental injury occurring but a few minutes before the time fixed for his work to begin and at a place where faithful service on his part required him to be at that time, preparatory to commencement of the day's work. While waiting he was discharging a duty to his employers which is a necessary incident to his day's work and partakes of the character of that work as a whole. To hold that he was not then acting in furtherance of the business of his employers would be to give a strict interpretation to remedial legislation which should be liberally construed to accomplish its purpose and promote justice. It is a fallacy to assume that the employment begins necessarily when the actual work begins. The course of employment should not be limited to the exact moment when a laborer reports for duty nor to the precise time when his labor for the day is completed. It necessarily includes a reasonable time for entry to and departure from the employer's premises.

In rejecting appellant's claim the State Industrial Board based its decision upon the authority of *Hannigan* v. *Technola Piano Company* (204 App. Div. 748). That case is not an authority against appellant. It was not a claim for compensation but a statutory action for death. Plaintiff's intestate in that case went to a loading platform to wait until it was time to report for work. The platform was not a proper entrance for employees and was not so used. The court held that plaintiff's intestate was a licensee to whom defendant owed no active vigilance and was answerable only for active negligence.

In *Matter of Fuller* v. *Title Guarantee & Trust Co.* (223 App. Div. 173) this court reversed a decision of the State Industrial Board disallowing a claim for death benefits. In that case it appeared that decedent, a lawyer, was employed as a title reader and worked in a small room in which there were many other persons. During a very hot spell in the summer he left his desk and went to the roof of the building, presumably for relaxation and air, and while there fell to the pavement below and was killed. The accident was unwitnessed. It was the practice on the part of the employees, known to the employer, for the employees to go to the roof on very hot days for the purpose of seeking relief from the heat and humidity. This court held that the accident arose out of and in the course of the employment and remitted the claim to the Industrial Board to make an award. An award was thereafter made which we

unanimously affirmed (229 App. Div. 816). Subsequently we denied the application of the employer and the insurance carrier for permission to appeal to the Court of Appeals (230 App. Div. 795). Later the Court of Appeals denied a like application. We are not able to draw any logical distinction between that case and the claim under consideration. In *Matter of Kantor* v. *Armstrong Publishing Co.* (236 App. Div. 749) this court held that a claimant who stepped out of his employment for the purpose of getting a drink of lemonade " was within the course of his employment when ascending the stairway leading to his employer's premises to perform the duties of his employment by a way provided by the employer." In *Matter of Broderick* v. *Colon & Co.* (229 App. Div. 817) this court affirmed an award in claimant's favor where the proof showed that claimant was employed as a bricklayer's helper and that his day's work commenced at eight o'clock and that on the morning he was injured he arrived at the place of employment about six-forty-five and while stooping to pick up his gloves was struck on the back by a falling valve and received injuries. Our determination was affirmed by the Court of Appeals (255 N. Y. 609).

In *Matter of Montgomery* v. *Bartholomay Milk Co.* (234 App. Div. 811) this court and the Court of Appeals (260 N. Y. 664) unanimously affirmed an award of the State Industrial Board in claimant's favor. In that case the deceased was a stableman and the Board found, as facts, that while he " was engaged in the regular course of his employment, and while working for his employer at his employer's premises, and while seeking fresh air in order to refresh himself, he stumbled over an object on the ground and fell down an embankment on the edge of the employer's premises," receiving injuries that caused his death.

The contention that decedent committed suicide by jumping from the building must be rejected. In ordinary civil actions where it is doubtful from the evidence whether death was caused by an accident or by suicide a presumption arises that an accident, and not suicide, was the cause of death. The presumption against suicide will stand and be decisive of the case until overcome by testimony which shall outweigh the presumption. The presumption created by section 21 of the Workmen's Compensation Law is much stronger. In any proceeding for the enforcement of a claim for compensation the statute declares that it shall be presumed " *in the absence of substantial evidence to the contrary* * * * that the injury was not occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another."

There is not the slightest bit of proof in this record which would indicate that decedent had any motive to intentionally take his life.

There is no evidence whatever that his habits and temperament, his domestic and social environment, or his pecuniary circumstances were such as to permit of such an inference.

We, therefore, hold without further comment that decedent was in the service of his employers at the time of the accidental death and in the course of his employment within the meaning of the Workmen's Compensation Law. The decision of the State Industrial Board should, therefore, be reversed and the claim remitted, with costs to the claimant against the State Industrial Board.

HILL, P. J., RHODES, McNAMEE and CRAPSER, JJ., concur.

Decision of the State Industrial Board reversed and the claim remitted, with costs to the claimant against the Board.